## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN  DISTRICT OF PENNSYLVANIA

_____

**CHRISTOPHER A. ROGALSKI,**                         :
                                    **Plaintiff,**     :
                                                      :
**v.**                                                :          **Docket No.:**
                                                      :
**NESHAMINY SCHOOL DISTRICT, AND**                    :
                                                      :
**ANDREW J. AMOROSO,**                                :
                                                      :
                                    **Defendants**    :
_____              :


### CIVIL RIGHTS COMPLAINT

### JURISDICTION

1. This court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.
Federal question jurisdiction arises pursuant to 42 U.S.C. § 1983, and due to diversity of citizenship and the amount in controversy exceeds $75,000, 28 U.S. Code § 1332 (a)(1).

### VENUE

2. Venue is proper pursuant to 28 U.S.C. § 1391 because the events in this complaint occurred within the boundaries of this court's federal district.

### PARTIES

3. Plaintiff Christopher A. Rogalski is a New Jersey citizen, with an address of 1011 Atlantic Ave., North Wildwood, NJ 08260.

4. Defendant Neshaminy School District is a school district located in Bucks County, Pennsylvania with an administrative office at 2001 Old Lincoln Highway, Langhorne, PA 19047.

5. Defendant Andrew J. Amoroso is Pennsylvania resident with an address of 16762 River View Circle, Bristol, PA 19007.  He is sued individually, and in his official capacity as a Middletown Township Police Officer, and Neshaminy School District School Resource Officer, *infra*.

COUNT I:  FEDERAL MALICIOUS PROSECUTION  PURSUANT TO 42 U.S.C. § 1983

6. Defendant Andrew J. Amoroso at all times material hereto, was a police officer in Middletown Township, Bucks County.

7. At all times material hereto, Plaintiff Christopher A. Rogalski was a licensed Pennsylvania substitute teacher.

8. At all times material hereto, Plaintiff Christopher A. Rogalski was also a professional tutor.

9. At all times material hereto, Plaintiff Christopher A. Rogalski was working as the building substitute teacher at Neshaminy High School and employed by a subcontractor of Neshaminy School District, and was assigned classes on a daily basis.

10. At all times material hereto, Plaintiff Christopher A. Rogalski was also employed with Club Z! In Home Tutoring as a professional tutor.

11. Neshaminy High School recognized Club Z! In Home Tutoring as a recommended tutoring service on a document published with its letterhead on its website, and posted in classrooms in the high school.

12. At all times material hereto, Kelli Lynne McGarrity's daughter, L.M., was a freshman student at Neshaminy High School who was almost 15 years old.

13. L.M. lacked a father in her life due to Kelli Lynne McGarrity having made abuse allegations against L.M.'s father.

14. In an English class on or about March 3, 2022, L.M. acted out to demand Plaintiff's attention because the screen of her phone was damaged.

15. To calm her down, Plaintiff needed to explain that she needed to take the phone for repair or it would get worse.

16. L.M. continued to demand Plaintiff's attention in that class by repeatedly calling out to him saying, "Hi, Mr. R!".

17. After Plaintiff smiled at these antics, L.M. told a classmate, "I got him to smile".

18. The following morning L.M. waived at Plaintiff from her locker as he was walking down Neshaminy High School's main hallway, and called out, "Hi Mr.R.!  Remember me?  I'm the girl with the phone."

19. According to L.M.'s sworn testimony on June 29, 2022, her locker was in the main hallway, in the fourth locker row from the front of the school, and as such, in close proximity to both the front entrance to the school and its main administrative office.

20. According to L.M.'s sworn testimony on June 29, 2022, from her locker she saw Plaintiff walk down the school's main hallway every day and that conduct was not directed at her.

21. According to L.M.'s sworn testimony on June 29, 2022, upon learning Plaintiff would be leaving her school in April 2022, L.M. told him, "We'll miss you".

22. L.M. waved to get Plaintiff's attention as he was passing her locker exiting the school on April 6, 2022.

23. According to L.M.'s sworn testimony on June 29, 2022, in response to L.M's statement that she would miss him, at the end of the school day on April 6, 2022, Plaintiff gave L.M. his contact information along with instructions that she not send him any inappropriate messages.

24. Teachers giving contact information to students when leaving a school is well established American tradition which is protected freedom of speech and association by the First Amendment of the United States Constitution and Article I, Sec. 1, Sec. 7, and Sec. 25 of the Pennsylvania Constitution.

25. Teachers also have a right to commercial free speech to advertise themselves as tutors which is protected by the by the First Amendment of the United States Constitution and Article I, Sec. 1, Sec. 7, and Sec. 25 of the Pennsylvania Constitution.

26. Plaintiff had a clear right to give his contact information to a student who expressed that she was sad the he was leaving the school.

27. According to an affidavit of probable cause filed by Amoroso on May 9, 2022, Kelli Lynne McGarrity contacted Middletown Township police on April 7, 2022 claiming that Plaintiff was "harassing" her daughter, L.M. at Neshaminy High School.

28. Plaintiff as a licensed teacher was required to report any suspected child abuse, physical or mental, to the appropriate authorities.

29. Upon learning that some investigation was in progress, on April 12, 2022, Plaintiff filed a report with the Pennsylvania Dept. of Human Services noting his concern that the student had been happy and smiling when he left her, and that he was concerned that someone was attempting to isolate a child.

30. In that same report, Plaintiff also requested that his report be forwarded to Middletown Police Lt. Peter Feeney, Amoroso's superior officer, and noted that he and Lt. Feeney had been acquainted for over 20 years.

31. The Pennsylvania Child Protective Services Law (CPSL), Section 6311.4 requires a presumption of good faith of the reporter and prohibits retaliation.

32. Amoroso became irate after learning that Plaintiff had filed a report with the Dept. of Human Services, and began a campaign of harassing phone calls to him and his family and falsely claimed to have obtained an arrest warrant when none was issued.

3

33. On or about April 21, 2022, Amoroso wrote a report that he spoke to Kelli Lynne McGarrity and freely acknowledged advising her the allegations "may not rise to the level of criminal...and this matter may be harassment at best."

34. On May 9, 2022, Amoroso filed an affidavit of probable cause with his buddy and former colleague, Magistrate Daniel Baronoski accusing Plaintiff, not of harassment, but a single count of corruption of a minor, 18 P.S. § 6301(a)(1)(i).

35. Amoroso's affidavit failed to detail any act which objectively would tend to corrupt the morals of a minor.

36. Amoroso's affidavit detailed an alleged course of conduct by Plaintiff over the course of over a month of the normal activities of a teacher in school, i.e., observing a student in class, inquiring about a students grades, making himself available if the student needed academic assistance, giving a student a small piece of candy when she was having a bad day which affected her learning, giving the student contact information to stay in touch after he left the school, and advising her not to send inappropriate messages, but Amoroso twisted the facts to make the teacher appear "creepy".

37. Amoroso used the affidavit to take make statements which he knew or should have known were false, with a reckless disregard for the truth of the matter, to wit:
A. That Plaintiff had told L.M., "Here's a kiss for flirting with me", knowing that none of the other 25 people in the room agreed with the statement.
B. That Plaintiff would appear at L.M.'s locker "between classes" to make casual conversation with her.
C. That Plaintiff did not "have access" to L.M.'s locker location despite it being in the front of the main hallway and that he walked past that location every day after coming from the main office in the morning and returning his paperwork there at the end of the day.
D. That Plaintiff went "out of his way" to walk in the halls of the language wing of Neshaminy High School , despite having a desk in the English office and access to the faculty rest room there, and did so when required to be elsewhere.

38. As a substitute teacher, Plaintiff schedule was flexible and subject to change on short notice.

39. Amoroso made no effort to interview Plaintiff's supervisor or any teacher about Amroso's claim that Plaintiff was wandering the halls when required to be elsewhere in the building.

40. Amoroso's buddy and former colleague Magistrate Baranoski, who was neither neutral nor detached in the matter as required by law, approved Amoroso's affidavit shortly after receiving it despite the affidavit not supporting the charge of corruption of a minor.

41. Baranoski ordered Plaintiff to have no unsupervised contact with minors due to the warrant he erroneously approved for corruption of a minor.

42. As a result of Baranoski's order, Plaintiff was unable to continue his employment as a substitute teacher or offer tutoring services for minors unsupervised.

43. Defendants coached L.M. to testify falsely at the June 29, 2022 preliminary hearing, specifically to testify that Plaintiff stated "Here's a kiss for flirting with the substitute", which was contrary to her former statement to Neshaminy High School's investigative staff, and the affidavit.

44. Alternatively, Amoroso brought charges based upon a known unreliable witness.

45. At the preliminary hearing, Baranoski also approved adding an additional charge of "disorderly conduct" which was unsupported by the record, and which he knew that if he had brought such a charge under the alleged facts when he was a police officer, he would have faced a malicious prosecution action.  "The crime of disorderly conduct is not intended as a catchall for every act which annoys or disturbs people; it is not to be used as a dragnet for all irritations which breed in the community." *Commonwealth v. Greene,* 410 Pa. 111, 117 (1963).

46. Baranoski then erroneously approved the charges of corruption of a minor and disorderly conduct against Plaintiff for trial in the Court of Common Pleas.

47. After the charges were bound over for trial in the Court Of Common Pleas, Plaintiff was required to make a court appearance at the Court Of Common Pleas while living and working out of the area.

48. On August 3, 2023, President Judge Wallace Bateman dismissed all charges against Plaintiff as unsubstantiated based upon L.M.'s testimony at the preliminary hearing and the law.

49. Prior to dismissing all criminal charges, Judge Bateman told the attorneys in the case that the Commonwealth had brought a harassment complaint against Plaintiff.

50. Neshaminy High School monitored its hall ways with recorded video surveillance cameras.

51. In a police report dated April 8, 2022, Amoroso noted that he had viewed a video of L.M.'s locker from April 6, 2022 showing Plaintiff giving the note to L.M. with his contact information.

52. Amoroso withheld that video, which showed L.M. waving to get Plaintiff's attention as he left the school, which he was required to provide to Plaintiff as exculpatory evidence by *Brady v. Maryland* 373 U.S. 83 (1963).

53. Amoroso withheld all videos recordings of interactions between between Plaintiff and L.M. which he was required to provide to Plaintiff as exculpatory evidence by *Brady v. Maryland* 373 U.S. 83 (1963).

54. Amoroso withheld all reports of investigations from Neshaminy School High School or Neshaminy School District, which he obtained, and which he was required to provide to Plaintiff as exculpatory evidence by *Brady v. Maryland* 373 U.S. 83 (1963).

55. Amoroso withheld the seating chart from Kim May's 5th period English class in room G-206, and the names of all students in that class whom he interviewed about L.M.'s claims, because they did not agree with L.M.'s contentions about what Plaintiff said to her, or did in that class when he substituted for Kim May, which he was required to provide to Plaintiff as exculpatory evidence by _Brady v. Maryland_ 373 U.S. 83 (1963).

56. Amoroso withheld exculpatory evidence which he was required to provide to Plaintiff as exculpatory evidence by _Brady v. Maryland_ 373 U.S. 83 (1963) as part of a malicious scheme to knowingly overcharge Plaintiff with corruption of a minor in an attempt to compel a plea bargain for harassment, which he knew was not supported by the evidence.

57. Defendants knew or should have known that their accusations against Plaintiff were baseless both factually and legally and did not constitute corruption of a minor or harassment.

58. It is believed and averred that Defendant Amoroso abused his office as a police officer to bring baseless charges against Plaintiff to facilitate a sexual relationship with Kelli Lynne McGarrity.

59. As the result of the baseless prosecution brought by defendants, Plaintiff incurred in excess of $13,500 in attorneys fees.

60. As the result of the baseless prosecution brought by defendants, Plaintiff incurred in excess of $1,500 in travel expenses.

61. As the result of the baseless prosecution brought by defendants, Plaintiff suffered loss of income from teaching and tutoring.

62. As the result of the baseless prosecution brought by defendants, Plaintiff suffered a loss of reputation, including disciplinary action against his expired teaching license based solely upon Amoroso's affidavit which his buddy and former colleague Magistrate Baranoski improperly approved.

63. As the result of the baseless prosecution brought by defendants, Plaintiff is ineligible for certain federal jobs working around children, even though the charges were dismissed as baseless.

64. As the result of the baseless prosecution brought by defendants, they disrupted operations in two school districts.

65. As the result of the baseless prosecution brought by defendants, Plaintiff suffered a loss of liberty which included being required to be fingerprinted and photographed, bieng required to travel and attend multiple court proceedings, including an unconstitutional scheduling conference before the Bucks County Court of Common Pleas intended to facilitate plea bargains in a courtroom Persian Bazaar, and a loss of the freedom to earn money through tutoring minors.

66. WHEREFORE, the actions of defendants constitute malicious prosecution contrary to the Fourteenth Amendment rights to Liberty and Due Process of Law.  Plaintiff demands judgment against defendants, jointly and severally, for an amount in excess of $100,000 in compensatory, exemplary and punitive damages.

COUNT II: _MONELL_ LIABILITY OF NESHAMINY SCHOOL DISTRICT

67. Plaintiff incorporates by reference the preceding paragraphs 1 through 66 as if they were set forth herein in full.

68. Defendant Andrew J. Amoroso at all times material hereto, also served as a school resource officer  pursuant to  24 P.S. § 13-1313-C at Neshaminy High School, the only high school for Neshaminy School District.

69. At all times material hereto, Neshaminy School District paid Defendant Andrew J. Amoroso's salary as a school resource officer, in whole or in substantial part.

70. At all times material hereto, Neshaminy School District provided Defendant Andrew J. Amoroso with an office and a telephone in Neshaminy High School.

71. At all times material hereto, Neshaminy School District improperly delegated Defendant Andrew J. Amoroso powers and duties exceeding those permitted by  24 P.S. Education § 13-1313-C(a).

72. Neshaminy School District Amoroso was given access to Neshaminy School District's records and video surveillance without a warrant in furtherance of permitting him to exceed the  powers and duties permitted by  24 P.S. Education § 13-1313-C(a).

73. At all times material hereto, Neshaminy School District used Defendant Andrew J. Amoroso as a "hatchet man" to field parental complaints about the conduct of educators' professional duties such as classroom management.  This was either an official policy of Neshaminy School District, or widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law", or resulted from the decision of a person employed by Neshaminy School District  with final policymaking authority.

74. At all times material hereto, Neshaminy School District failed to train Defendant Andrew J. Amoroso on the statutory professional immunities of teachers under _in loco parentis_, 24 P.S. § 13-1317.

75. At all times material hereto, Neshaminy School District failed to train Defendant Andrew J. Amoroso on the constitutional rights of educators to engage in freedom of speech and association in the school, _Tinker v. Des Moines Independent Community School District_, 393 U.S. 503 (1969).

76. Neshaminy School District remained deliberately indifferent to Defendant Andrew J. Amoroso's training, supervision or discipline, and deliberately indifferent to its failure to adopt policies necessary to prevent constitutional violations of fundamental First Amendment freedoms and rights.

77. Neshaminy School District conducted its own independent investigation of Kelli Lynne McGarrity's.  It is believed and averred that Neshaminy School District's independent investigation contradicted Defendant Andrew J. Amoroso's May 9, 2022 affidavit of probable cause against Plaintiff.

78. Neshaminy School District, or it's employee, used Defendant Andrew J. Amoroso's May 9, 2022 affidavit of probable cause against Plaintiff to initiate disciplinary proceedings against Plaintiff's expired teaching license with the Pennsylvania Dept of Education.

79. In both the criminal prosecution and administrative disciplinary action against Plaintiff, Neshaminy School District withheld exculpatory evidence, including video surveillance, and reports contradicting Defendant Andrew J. Amoroso's May 9, 2022 affidavit of probable cause against Plaintiff.

80. WHEREFORE, Defendant Neshaminy School District is liable to Plaintiff in amount exceeding $100,000 for its *de facto* policies and/or failing to properly train Defendant Andrew J. Amoroso on the statutory immunities of teachers to parental complaints or teachers' constitutional rights to freedom of speech and association, liberty and Due Process of Law.

## COUNT III: BREACH OF CONTRACT

81. Plaintiff incorporates by reference the preceding paragraphs 1 through 80 as if they were set forth herein in full.

82. Neshaminy School District had a statutory obligation with its teacher subcontractors to afford them *in loco parentis* status and immunities in its schools.

83. By contracting with subcontractors to provide licensed teachers, Neshaminy School District had a contractual obligation to afford them *in loco parentis* status and immunities in its schools from those it employed, directly or indirectly, and it failed to do so.

84. WHEREFORE, the actions of defendants constitute a breach of contract.  Plaintiff demands judgment against defendant, Neshaminy School District, for an amount in excess of $100,000 in compensatory damages.

## DEMAND FOR JURY TRIAL

85. Plaintiff hereby demands trial by jury on all issues for which a right to trial by jury exists by law pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

## VERIFICATION

I verify that the facts set forth in this application are true and. correct to the best of my knowledge or information and belief.  I declare under penalty of perjury that the foregoing is true and correct.


Christopher A. Rogalski, Plaintiff


Executed on February 4, 2026